IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JEFFREY BRUENINGSEN, ALDIS BARSKETIS, STEVE SIMCHEN, RICHARD SORENSEN, THOMAS H. STEED, JR., JOE METCALFE and MICHAEL POWER, on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>RESORT EXPRESS INC., PARK CITY TRANSPORTATION, INC. and PREMIER TRANSPORTATION, INC.,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:12-cv-00843-DN<br><br>District Judge David Nuffer |

Defendants Resorts Express, Inc. ("Resorts Express"), Park City Transportation, Inc.

("PCT"), and Premier Transportation, Inc. ("PTI") (collectively "Defendants") filed a Motion for

Partial Summary Judgment[1] on five of Plaintiffs' claims, including:

- Plaintiffs' third claim that Defendants violated the Fair Labor Standards Act[2] ("FLSA") by retaining non-cash tips;
- Plaintiffs' second claim that Defendants violated the FLSA by failing to pay overtime wages;[3] and
- Plaintiffs' fourth, fifth, and sixth common law claims for conversion, unjust enrichment, and quantum meruit.

Defendants PCT and PTI move for summary judgment on all claims in the complaint

because Plaintiffs were never their employees.

---

[1] Motion for Partial Summary Judgment, docket no. 33, filed October 22, 2013.

[2] 29 U.S.C. §§ 201–219 (2012).

[3] Defendants' motion for summary judgment on Plaintiffs' second claim excludes Plaintiff Michael Power because "he did not drive a qualifying motor vehicle under the Motor Carrier Act exemption." *See* Motion for Partial Summary Judgment at ii.

After careful review of the pleadings and the memoranda submitted by the parties, and the relevant legal authority, the motion for partial summary judgment is GRANTED.

UNDISPUTED FACTS .................................................................................................. 2
DISCUSSION ............................................................................................................. 6
    I.     DEFENDANTS DID NOT VIOLATE THE FAIR LABOR STANDARDS
           ACT BY RETAINING NON-CASH TIPS. ..........................................................6
    II.    DEFENDANTS ARE EXEMPT FROM THE OVERTIME PROVISION OF
           THE FAIR LABOR STANDARDS ACT ..........................................................10
    III.   COMMON LAW CLAIMS ARE PRE-EMPTED AND FAIL ON THE
           MERITS ...............................................................................................................15
    IV.   PARK CITY TRANSPORTATION, INC. AND PREMIER
           TRANSPORTATION, INC. ARE NOT PLAINTIFFS' EMPLOYERS AND
           ARE NOT HELD LIABLE ..................................................................................16
ORDER .................................................................................................................... 17

## UNDISPUTED FACTS[4]

1.      At all times during Plaintiffs' employment and through the present date, Defendants have not taken a "tip credit." In other words, Defendants do not claim a credit based on tips, partial or otherwise, to meet minimum wage requirements.

2.      Defendant Resorts Express employed Plaintiffs as drivers and "had control over and had the power to establish, enforce, and change: (a) Plaintiffs' . . . working conditions; (b) policies governing the allocation of gratuities; and (c) compensation policies and practices."[5]

3.      Defendants retained some or all of the non-cash tips.[6]

4.      All named Plaintiffs, except Michael Power, worked for Resorts Express as van drivers. All named Plaintiffs, except Power, drove 15-passenger vans as their usual assignment.

---

[4] Unless otherwise cited, all facts are taken from Motion for Partial Summary Judgment, docket no. 33, filed October 22, 2013.

[5] Amended Complaint ¶ 17, docket no. 12, filed Nov. 1, 2012.

[6] Supplemental Memorandum Opposing Motion for Partial Summary Judgment at 3, docket no. 60, filed June 30, 2014.

5.      On multiple occasions, Plaintiffs, except Power, drove vehicles that could transport less than 15 passengers, including 6-passenger Cadillac Escalades, 7-passenger Chevrolet Suburbans, 4-passenger Lincoln Town Cars, and limousines.[7]

6.      Power drove exclusively limousines.

7.      Approximately 97% of the trips driven by Defendants' van drivers are between Park City and the Salt Lake City Airport, and many of the passengers on these airport trips are either beginning or ending an interstate or international trip. The trip between Park City and the airport is often the beginning or the end of that continual trip.

8.      Plaintiffs claim the 97% figure is unsupported by Defendants' evidence. Plaintiffs also assert that they drove intrastate passengers on "multiple occasions."[8]

9.      Defendants classify their revenues into four categories: (a) Customer Accounts; (b) Free Individual Travelers; (c) Tour Operators; and (d) Group Business.

10.     The Customer Accounts category includes all customers who have an account with Defendants, and amounts to approximately one quarter of Defendants' revenues. This category includes some individuals, but the vast majority of customers in this category are business organizations, including hotels in the Park City area, non-hotel business entities that conduct regular business with Defendants, traditional travel agencies, and "affiliates," i.e., other ground transportation companies outside Utah.

11.     Customer Account trips are almost always either to or from the Salt Lake International Airport. When a travel agency arranges the trip to or from the airport, it is always part of a longer interstate trip from outside Utah to the Park City area, usually for skiing during the winter months.

---

[7] *Id.* at 3–4.

[8] *Id.* at 3–6.

12.     The travel agency sells the entire interstate trip (airline ticket and ground transportation using Defendants' shuttle service) as a package deal to the passenger. The passenger pays the travel agency and then the agency pays Defendants. To redeem Defendants' services, the passenger shows an emailed ticket or voucher to Defendants' employee.

13.     When the customer account is an "affiliate," the passenger pays the affiliated out-of-state ground transportation company for the trip to the airport in his or her home city and for the trip from the Salt Lake International Airport to the Park City area. The affiliate then reimburses Defendants for their service.

14.     The revenue from the Free Individual Travelers accounts for approximately 35% of Defendants' revenues. The Free Individual Traveler category includes all trips not associated with a group or a customer account. The vast majority of the trips in this category are trips to and from the airport for passengers who book their travel with Defendants on Defendants' website, as well as those who simply call Defendants and reserve the trip over the telephone.

15.     Free Individual Travelers often arrange for ground transportation with Defendants in advance of their air travel.

16.     With very few exceptions, Defendants will not accept a reservation for ground transportation from the airport without receiving the passenger's flight number.

17.     Revenue from Tour Operators accounts for approximately 8% of Defendants' revenues. Tour Operators consist almost entirely of group ski trips purchased by individual travelers from outside Utah. They purchase a Park City area ski trip from a Tour Operator that includes an airline ticket and ground transportation from the airport to their hotel in the Park City area. The Tour Operator then pays Defendants. The passenger receives a ticket or voucher by email which he or she can either print out or show Defendants' employee on a smart phone.

18.     The final revenue category is Group Business, which accounts for approximately one-third of Defendants' revenues. In this category, the payer is typically an event sponsor who arranges for transportation of a group of individuals living outside of Utah to an event in the Park City area and then back to their out-of-state homes. Defendants' shuttle service is arranged before the interstate travel begins.

19.     In this category, the individual passenger receives his or her ticket or voucher for the airport transportation from the sponsor and either prints out the email or displays it to Defendants' employee on a smart phone.

20.     Defendant Resorts Express is regulated by the U.S. Department of Transportation and has been assigned a license as a regulated motor carrier providing interstate passenger service under the Federal Motor Carrier Safety Act.

21.     All of the named plaintiffs were employed by Defendant Resorts Express.

22.     On multiple occasions, Plaintiffs drove customers of PCT and PTI.[9]

## SUMMARY JUDGMENT STANDARD

Partial summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[10] Initially, the moving party bears the burden of showing that there is an absence of a genuine dispute over any material fact.[11] The moving party may discharge its burden by producing evidence that shows an absence of a genuine issue of material fact or by "showing . . . that there is an absence of evidence to support the nonmoving party's case."[12] The nonmoving party must present facts, by affidavit or

---

[9] *Id.* at 4.

[10] Fed. R. Civ. P. 56(a).

[11] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[12] *Id.* at 324–25.

otherwise, that show there is a genuine issue for trial.[13] "The mere existence of a scintilla of evidence in support of a plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[14] There is no genuine issue of material fact if a reasonable mind could only come to one conclusion.[15]

## DISCUSSION

### I.   DEFENDANTS DID NOT VIOLATE THE FAIR LABOR STANDARDS ACT BY RETAINING NON-CASH TIPS.

Defendants move for summary judgment on Plaintiffs third cause of action that Defendants violated the FLSA by retaining non-cash tips. Plaintiffs argue they had a legal property right to all non-cash tips pursuant to Department of Labor ("DOL") regulation 29 C.F.R. § 531.52, which interprets § 203(m) of the FLSA.

The Supreme Court has established the *Chevron* two-step analysis to determine whether a court should give deference to an agency's interpretation of a statute.[16] Under *Chevron*'s first step, a court will not defer to the agency's statutory interpretation if "Congress has directly spoken to the precise question at issue."[17] When Congress "is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."[18] However, under *Chevron*'s second step, if the statute is ambiguous or silent on the issue at hand, the court will defer to the agency's interpretation if it "is based on a permissible construction of the statute."[19]

---

[13] Fed. R. Civ. P. 56(e).

[14] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[15] *Id.* at 250–51.

[16] *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

[17] *Id.* at 842.

[18] *Id.* at 842–43.

[19] *Id.*

Congress has directly spoken on the issue of when an employer is required to turn over all tips to an employee. Under § 203(m) of the FLSA, an employer must pay tipped employees a cash wage that equals the federal minimum wage when tips are added. The statute states:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
>
>> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
>>
>> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.
>
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.[20]

Courts have held that § 203(m) only prohibits an employer from retaining a portion or all of the tips if the employer pays a tipped employee less than the federal minimum wage and takes the tip credit, unless there is a valid tip pool.[21] Thus, an employer is not prohibited from retaining an employee's tips if the employer does not take the tip credit.[22]

In *Cumbie v. Woody Woo, Inc.*,[23] the plaintiff argued that § 203(m) required the employer to allow the employee to "retain all of her tips—except in the case of a 'valid' tip pool involving

---

[20] 29 U.S.C. § 203(m) (2012).

[21] *Stephenson v. All Resort Coach, Inc.*, No. 2:12-CV-1097 TS, 2013 WL 4519781, at *5 (D. Utah Aug. 26, 2013) (citing various court decisions).

[22] *See e.g., Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 581 (9th Cir. 2010).

[23] 596 F.3d 577 (9th Cir. 2010).

customarily tipped employees—regardless of whether her employer claims a tip credit."[24] The

Ninth Circuit disagreed, explaining:

> [W]e cannot reconcile [the plaintiff's] interpretation with the plain text of the
> [statute], which imposes *conditions* on taking a tip credit and does not state
> freestanding *requirements* pertaining to all tipped employees. A statute that
> provides that a person must do *X in order to achieve Y* does not mandate that a
> person must do *X*, period.

> If Congress wanted to articulate a general principle that tips are the property of
> the employee absent a 'valid' tip pool, it could have done so without reference to
> the tip credit.[25]

Here, Plaintiffs argue that § 203(m) "leaves gaps regarding the use of an employee's tips

when an employer does not take a tip credit."[26] In support of this argument, Plaintiffs cite to 29

C.F.R. § 531.52, which they claim the DOL passed in order to fill-in the alleged statutory gap.[27]

The regulation states:

> A tip is a sum presented by a customer as a gift or gratuity in recognition of some
> service performed for him. It is to be distinguished from payment of a charge, if
> any, made for the service. Whether a tip is to be given, and its amount, are matters
> determined solely by the customer, who has the right to determine who shall be
> the recipient of the gratuity. Tips are the property of the employee whether or not
> the employer has taken a tip credit under section 3(m) of the FLSA. The employer
> is prohibited from using an employee's tips, whether or not it has taken a tip
> credit, for any reason other than that which is statutorily permitted in section
> 3(m): As a credit against its minimum wage obligations to the employee, or in
> furtherance of a valid tip pool. Only tips actually received by an employee as
> money belonging to the employee may be counted in determining whether the
> person is a "tipped employee" within the meaning of the Act and in applying the
> provisions of section 3(m) which govern wage credits for tips.[28]

---

[24] *Id.* at 580.

[25] *Id.* at 581 (emphasis in original).

[26] Supplemental Memorandum Opposing Motion for Partial Summary Judgment at 34.

[27] *Id.* at 27–36.

[28] 29 C.F.R. § 531.52 (2014).

According to Plaintiffs, under this regulation all tips are property of the employee whether or not the employer takes a tip credit.[29]

Defendants argue, however, that 29 C.F.R. § 531.52 is invalid under *Chevron* step-one.[30] In support of their argument, they cite three recent district court decisions—*Stephenson v. All Resorts, Inc.*;[31] *Oregon Restaurant and Lodging v. Solis*;[32] and *Trinidad v. Pret A Manger (USA) Ltd.*[33]—all of which held that 29 C.F.R. § 531.52 was invalid under *Chevron*'s first step, based on the Ninth Circuit's analysis in *Cumbie*, which held that § 203(m) applies only to employers that take a tip credit to satisfy minimum wage requirements.[34]

In *Stephenson v. All Resorts, Inc*., the employee-plaintiff argued that 29 C.F.R. § 531.52 correctly interpreted § 203(m), thus creating a property right to all tips.[35] The court rejected that argument and followed the reasoning from the *Cumbie*, *Solis*, and *Trinidad*, in holding:

> The statute does not impose a freestanding requirement pertaining to all tipped employees. Had Congress wanted to create such a requirement it could have easily mandated that all tips belong to the employee, without tying it to a tip credit. Congress does not impose such a requirement. Rather, Congress created a situation where employers can either pay the minimum wage free and clear of any conditions, or take a tip credit and comply with the conditions imposed by Section 3(m). The regulations take away this Congressionally created choice and mandate that tips are property of the employee. This construction cannot be supported by § 203(m).[36]

---

[29] Supplemental Memorandum Opposing Motion for Partial Summary Judgment at 27–28.

[30] Motion for Partial Summary Judgment at 3–6.

[31] No. 2:12-CV-1097 TS, 2013 WL 4519781 (D. Utah Aug. 26, 2013).

[32] 948 F. Supp. 2d 1217 (D. Or. 2013).

[33] 962 F. Supp. 2d 545 (S.D.N.Y. 2013).

[34] *Stephenson*, 2013 WL 4519781, at *8; *Solis*, 948 F. Supp. 2d at 1223–24; *Trinidad*, 962 F. Supp. 2d at 562.

[35] *Stephenson*, 2013 WL 4519781, at *5.

[36] *Id.* at *16.

Plaintiffs argue that *Stephenson* and the other cited cases "simply got it wrong" because Congress gave the DOL the authority to enforce the FLSA.[37] However, the statutory language is clear. It gives employers the choice of how they will pay their employees a minimum wage—either by taking a tip credit or not. If employers take a tip credit to supplement and meet the minimum wage requirement, employees are entitled to retain all tips, unless there is a valid tip pool that distributes the tips among the employees. If employers do not take a tip credit, they must pay their employees the full hourly minimum wage because they are not using a tip credit to make up the difference between the employees earnings and minimum wage requirements.[38] Reading the statute to mandate that tips are property of the employee regardless of the tip credit renders Congress' reference to the tip credit superfluous. The DOL regulation 29 C.F.R. § 531.52 fails *Chevron* step-one because it departs from Congress' clear intent that tips are the property of the employee only when an employer takes the tip credit. Therefore, Resorts Express did not violate § 203(m) by retaining all or a portion of the non-cash tips because it did not take a tip credit.

## II. DEFENDANTS ARE EXEMPT FROM THE OVERTIME PROVISION OF THE FAIR LABOR STANDARDS ACT

Defendants also move for summary judgment on Plaintiffs' second claim that Defendants failed to pay overtime, in violation of the FLSA.  The FLSA requires employers to pay employees overtime rates for any work performed beyond a forty hour workweek.[39] The FLSA also provides a number of exemptions to the overtime provision, including what is known as the

---

[37] Supplemental Memorandum Opposing Motion for Partial Summary Judgment at 33.

[38] *Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 230 (S.D.N.Y. 2002) ("Congress gave employers of tipped employees a simple choice: either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.").

[39] 29 U.S.C. § 207(a)(1) (2012).

Motor Carrier Act ("MCA") exemption.[40] Under the MCA exemption, employers do not need to pay overtime compensation "to any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of [the MCA]."[41]

To be subject to regulations by the Secretary of Transportation and thus exempt from the overtime provision of the FLSA, a motor carrier employee "in the performance of his duty," must "move[] goods in interstate commerce and affect[] the safe operation of motor vehicles on public highways."[42] A commercial motor vehicle is defined as a vehicle capable of carrying or designed to carry more than eight people or weighs at least 10,001 pounds.[43] Transportation that is strictly intrastate is still considered "'interstate' in character when it forms a part of a 'practical continuity of movement' across state lines from the point of origin to the point of destination."[44] In cases of mixed commercial and non-commercial motor carrier fleets, courts have held that the MCA exemption covers employees "as long as [their] duties affect the safety of operation of vehicles covered by the Motor Carrier Act."[45]

The Supreme Court has held that "[i]t is the character of the activities rather than the proportion of either the employee's time or of his activities that determines" whether the MCA exemption applies.[46] Other courts have held that an employee only needs to spend *de minimus* time operating a commercial motor vehicle for the MCA exemption to apply.[47]

---

[40] *See* 29 U.S.C. § 213(b)(1)-(30) (2012).

[41] *Id.* at § 213(b)(1).

[42] *Foxworthy v. Hiland Dairy Co*., 997 F.2d 670, 672 (10th Cir. 1993).

[43] 49 U.S.C. § 31132(1) (2012).

[44] *Foxworthy*, 997 F.2d at 672.

[45] *Hernandez v. Brink's, Inc*., No. 08-20717-CIV, 2009 WL 113406, at *6 (S.D. Fla. Jan. 15, 2009).

[46] *Morris v. McComb*, 332 U.S. 422, 432 (1947); *see also Starrett v. Bruce*, 391 F.2d 320, 323 (10th Cir.1968).

[47] *Hernandez*, 2009 WL 113406, at *6; *Avery v. Chariots for Hire*, 748 F. Supp. 2d 492, 500 (D. Md. 2010).

In *Abel v. Southern Shuttle Services, Inc.*,[48] a shuttle service company transported passengers from the airport to hotels and other locations in the Miami area.[49] Many of the passengers booked reservations with the shuttle service via travel websites in package deals from internet travel companies.[50] The Eleventh Circuit held that these passengers had a "practical continuity of movement with the overall interstate journey."[51] Thus, the shuttle service fell under the MCA exemption to the overtime provision of the FLSA.[52]

In *Hernandez v. Brink's, Inc.*,[53] employees brought an action for unpaid overtime under the FLSA.[54] The defendant, Brinks, Inc., was a motor carrier that operated in interstate commerce under the terms of the MCA, but had a mixed fleet of commercial and non-commercial vehicles.[55] The court held that employees of mixed fleets, like Brink's, are exempt from the overtime provision of the FLSA under the MCA exemption when the principal duties of their employment involve tasks related to commercial vehicles.[56] The court stated:

> None of Plaintiffs' job duties involved primarily non-commercial vehicles to an extent that would render the effect of their duties on the safety of operation of commercial motor vehicles de minimus. Each Plaintiff worked on both commercial and non-commercial vehicles and their duties therefore sufficiently impacted the safety of operations of commercial motor vehicles to bring them within the scope of the FLSA's motor carrier exemption.[57]

---

[48] 631 F.3d 1210 (11th Cir. 2011).

[49] *Id.* at 1212.

[50] *Id.*

[51] *Id.* at 1217.

[52] *Id.*

[53] No. 08-20717-CIV, 2009 WL 113406 (S.D. Fla. Jan. 15, 2009).

[54] *Id.* at *1.

[55] *Id.* at *6.

[56] *Id.*

[57] *Id.*

It is undisputed that Defendants are subject to the regulatory authority of the Secretary of Transportation under the MCA, and therefore are exempt from the overtime provision of the FLSA. Plaintiffs argue that the Defendants have not presented admissible evidence that "plaintiffs transported passengers in [commercial] vehicles in interstate commerce."[58] But Defendants have submitted admissible evidence, including declarations from Resorts Express employees with personal knowledge of the operations of the company.[59] Plaintiffs deposed these Resorts Express employees but have failed to show how the depositions contradict the declarants' personal knowledge of these facts.[60] The declarations and depositions adequately show that approximately 97% of Defendants' business involves transporting passengers from the Salt Lake International Airport to the Park City region. Similar to *Abel,* a majority of these passengers book their travel in advance either through a travel agency or an online travel site and these passengers have a practical continuity of movement with their overall travel. Accordingly, Defendants fall under the MCA exemption to the FLSA overtime provision.

Plaintiffs also attempt to dispute that Defendants served interstate passengers in a practical continuity of movement by stating that on "multiple occasions"[61] they drove intrastate or walk-up passengers. However, the fact that Plaintiffs drove strictly intrastate or walk-up passengers on multiple occasions is not enough to legitimately dispute Defendants' evidence that 97% of their customers were in a practical continuity of movement with their overall interstate journey. Without specific clarification of how the quantity that "multiple occasions" represents, the fact that they drove intrastate or walk-up passengers on multiple occasions does not

---

[58] Supplemental Memorandum Opposing Motion for Partial Summary Judgment at 36.

[59] Declaration of Kaity Quinley, docket no. 33-1; Declaration of Taylor Ferrin, docket no. 33-2; Supplemental Declaration of Katie Quinley, docket no. 49-1.

[60] Supplemental Memorandum Opposing Motion for Partial Summary Judgment at 3-6.

[61] *Id.* at 37-41.

undermine the Defendants' 97% figure. Plaintiffs' assertions offer only a mere scintilla of evidence, which is insufficient to support their claim. Plaintiffs have not shown a genuine issue as to the fact that Defendants serve interstate passengers in a practical continuity of movement with their overall travel.

Plaintiffs claim that Defendants' evidence fails to show that it is undisputed that "plaintiffs drove commercial motor vehicles that were designed or used to transport more than 8 passengers."[62] Yet, the declarations and depositions of the Resorts Express employees show that Plaintiffs drove 15 passenger vans to an extent that it would significantly impact "the safety of operations of commercial motor vehicles."[63]

In addition, Plaintiffs claim to have presented adequate evidence to dispute that they did not drive commercial vehicles that fall under the MCA exemption by stating that that on "multiple occasions" Plaintiffs "drove vehicles that were not designed or used to transport more than 8 passengers."[64] However, as stated previously, this assertion fails because the vague term "multiple occasions" does not sufficiently dispute Defendants' evidence. Even in a mixed fleet, the character of Plaintiffs' job duties includes driving 15 passenger vans, which are covered under the MCA. As the court held in *Hernandez*, when a fleet is mixed, the time Plaintiffs spent driving the 15 passenger vans need only be more than *de minimus*.[65] Plaintiffs fail to dispute the material fact that they drove commercial vehicles that fall under the MCA and DOT's regulatory authority. Because Defendants are subject to the MCA, they are exempt from the overtime provision of the FLSA.

---

[62] *Id.* at 36-37.

[63] *Hernandez*, 2009 WL 113406, at *6.

[64] Supplemental Memorandum Opposing Motion for Partial Summary Judgment at 36-37.

[65] *Hernandez*, 2009 WL 113406, at *6.

### III.      COMMON LAW CLAIMS ARE PRE-EMPTED AND FAIL ON THE MERITS

Defendants move for summary judgment on all of Plaintiffs' common law claims,

including: conversion; unjust enrichment; and quantum meruit. Defendants argue that these

common law claims are preempted by the FLSA because they are based on the same facts and

allegations of the FLSA claims.[66] Plaintiffs assert that because Defendants have argued that

Plaintiffs have no claim to the tips under the FLSA, "[D]efendants' pre-emption argument is

contradicted, and defeated, by their own prior argument that plaintiffs cannot recover the Tips

under the FLSA."[67]

Similar arguments were raised in *Stephenson*.[68] In that case, the plaintiffs argued that the

defendant could not seek protection from the FLSA under the MCA overtime exemption and the

tip provision in one part of the defendant's memorandum, and later argue that the FLSA applies

to preempts the plaintiffs' common law claims.[69] The court disagreed, stating:

> [The Plaintiffs'] argument oversimplifies the [Defendant's argument]. Defendant
> does not argue, as Plaintiffs suggest, that it is completely exempt from the FLSA.
> Rather, Defendant argues that it is exempt from the overtime provisions of the
> FLSA, Defendants concede that they are subject to the FLSA in certain respects,
> but argue its practice concerning tips does not violate the FLSA.  Therefore,
> Defendant's argument that Plaintiffs' common law claims are preempted is not
> inconsistent with its argument concerning Plaintiffs' FLSA claims.[70]

The *Stephenson* court held that the FLSA preempted the plaintiff's common law claims and that

the plaintiffs' common law claims failed on the merits because the plaintiffs were not entitled to

their tips under the FLSA.[71]

---

[66] Motion for Partial Summary Judgment at 10–11.

[67] Supplemental Memorandum Opposing Motion for Partial Summary Judgment at 41–42.

[68] *Stephenson*, 2013 WL 4519781.

[69] *Id.* at *9.

[70] *Id.*

[71] *Id.*

Plaintiffs' claims here are identical to those made by the plaintiffs in *Stephenson*. As in *Stephenson*, Defendants do not argue that they are not subject to the FLSA; rather, Defendants argue that they have not violated the FLSA because they retained tips and that they are exempt from the overtime provision of the FLSA. As in *Stephenson*, Defendants' argument that the FLSA preempts Plaintiffs' common law claims is not inconsistent with Defendants' arguments against Plaintiffs' tip and overtime claims under the FLSA.

Also similar to *Stephenson*, Plaintiffs' common law claims fail on the merits. Plaintiffs' common law claims emerge from the notion that Plaintiffs are entitled to the tips. Tip entitlement derives solely from the FLSA. As described above, Plaintiffs fail to show that the FLSA entitles them to the tips. Therefore, Plaintiffs' common law claims fail on the merits.

## IV. PARK CITY TRANSPORTATION, INC. AND PREMIER TRANSPORTATION, INC. ARE NOT PLAINTIFFS' EMPLOYERS AND ARE NOT HELD LIABLE

Defendants PCT and PTI move for summary judgment on all of Plaintiffs' claims because Plaintiffs were never their employees.[72] Plaintiffs never disputed this fact in their statement of facts.[73] Under the local rules, this undisputed fact is deemed admitted.[74]

Even if Plaintiffs had properly disputed this material fact, their allegations fail to show that Plaintiffs were actually employed by PCT and PTI. Plaintiffs argue that because they drove customers of both PCT and PTI on multiple occasions they worked for those companies. However, the fact that they drove PCT and PTI customers is insufficient to show that they were

---

[72] Motion for Partial Summary Judgment, at xvi, 12 – 13.

[73] *See* Memorandum in Opposition to Motion for Partial Summary Judgment; Supplemental Memorandum in Opposition to Motion for Partial Summary Judgment.

[74] *See* DUCivR 56-1(c) ("For the purpose of summary judgment, all material facts of record meeting the requirements of Fed. R. Civ. P. 56 that are set forth with particularity in the movant's statement of material facts will be deemed admitted unless specifically controverted by the statement of the opposing party identifying and citing to material facts of record meeting the requirements of Fed. R. Civ. P. 56.").

actually employed by PCT or PTI. A reasonable jury could not find for Plaintiffs on this fact

alone. Thus, Defendants PCT and PTI cannot be liable under any of Plaintiffs' causes of actions,

which are derived from the employer-employee relationship.


## ORDER

IT IS HEREBY ORDERED that Defendants' Motion for Partial Summary Judgment[75] is

GRANTED in favor of Defendants:

1. On Plaintiffs' third claim that Defendants violated the Fair Labor Standards Act by
   retaining non-cash tips;

2. On Plaintiffs' second claim (except Plaintiff Michael Power)[76] that Defendants
   violated the Fair Labor Standards Act by failing to pay overtime wages;

3. On Plaintiffs' fourth, fifth, and sixth claims for conversion, unjust enrichment, and
   quantum meruit; and

4. On all of Plaintiffs' claims against Defendants Park City Transportation and Premier
   Transportation, Inc.


Signed January 26, 2015.

BY THE COURT

District Judge David Nuffer

---

[75] Docket no. 33.

[76] *See* Motion for Partial Summary Judgment at ii.